Filed 11/2/15  (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREY DAVID WOODS,<br><br>    Defendant and Appellant. | D066741<br><br><br><br>(Super. Ct. No. SCE331081)<br><br>ORDER DENYING REHEARING<br>AND MODIFYING OPINION<br><br>CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 20, 2015, be modified as

follows:

On page 42, in the disposition section, the first two full paragraphs are deleted in

their entirety and the following paragraphs are inserted in their place:

> "The judgment is reversed.  Woods's convictions for forcible oral
> copulation of a minor 14 or older and forcible oral copulation of a
> minor 14 or older in concert in counts 3, 4, 5, 6, 8, 10, 11, 13, and 15
> are reversed, and his sentences as to these counts are vacated.
> Woods's remaining convictions are affirmed.

> "The People may retry Woods on the charges of forcible oral
> copulation of a minor 14 or older and forcible oral copulation of a
> minor 14 or older in concert within the applicable time period.  If the
> People do not bring Woods to retrial on counts 3, 4, 5, 6, 8, 10, 11,

13, and 15 within the applicable time, the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect convictions for nonforcible oral copulation of a minor under section 288a, subdivision (b)(1), on those counts, and shall resentence Woods with respect to all of the counts on which he stands convicted, including the counts affirmed in this opinion. In the event that Woods is retried on these charges and convicted on some or all of the charges, the court shall resentence Woods with respect to all of the counts on which he stands convicted, including the counts affirmed in this opinion."

This modification changes the judgment.

The petitions for rehearing are denied.

McCONNELL, P. J.

Copies to: All parties

2

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREY DAVID WOODS,<br><br>    Defendant and Appellant. | D066741<br><br><br><br>(Super. Ct. No. SCE331081) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Judgment reversed; convictions reversed in part, affirmed in part; remanded for further proceedings.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott Taylor and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Defendant Grey David Woods appeals from a judgment of conviction entered after a jury convicted him of 16 counts related to sexual misconduct involving his girlfriend's underage daughter.[1]

On appeal, Woods contends that his convictions on counts 1 through 15 should be reversed on either of two grounds. First, Woods contends that the trial court failed to instruct the jury sua sponte on lesser included offenses to the charged offenses of forcible rape, forcible oral copulation of a minor over the age of 14, and forcible oral copulation in concert of a minor over the age of 14. Second, Woods contends that the trial court prejudicially erred in instructing the jury on the meaning of "consent" as it relates to his case.

Woods also makes two arguments with respect to the jury's findings regarding great bodily injury as to counts 1 and 16. Woods challenges the sufficiency of the evidence to support the jury's finding of great bodily injury, arguing that the victim's pregnancy and subsequent abortion do not constitute sufficient evidence that he inflicted great bodily injury on the victim. Woods also contends that the trial court prejudicially erred in instructing the jury with respect to the meaning of great bodily injury when it

---

[1]    Woods pled guilty to a 17th count, for possession of child pornography (Pen. Code, § 311.11, subd. (a)), prior to trial.

modified the instruction to state that "causing a woman to become pregnant can be the infliction of great bodily injury." Finally, Woods contends that the cumulative effect of the errors that he alleges requires reversal.[2]

The People concede, and we agree, that the trial court had a duty to instruct the jury regarding the lesser included offense of nonforcible oral copulation with a minor with respect to the charges of forcible oral copulation of a minor over the age of 14 and forcible oral copulation in concert of a minor over the age of 14. The People urge that the error was harmless. However, under the circumstances of this case, we cannot conclude that there is no reasonable probability that Woods would have received a more favorable result if the court had provided the instructions on the lesser included offense.

We disagree with Woods that the trial court had a duty to instruct the jury regarding the offense of statutory rape as a lesser included offense of the offense of forcible rape. We conclude that the statutory rape offense that Woods identifies is not a lesser included offense of the substantive offense of forcible rape, even under the accusatory pleading test. We reject the remainder of Woods's arguments for reversal.

We reverse Woods's convictions on counts 3, 4, 5, 6, 8, 10, 11, 13, and 15. Woods may be retried on these counts. We affirm Woods's convictions on the remaining counts.

_____

[2]     Woods initially raised an additional argument on appeal, claiming that the trial court had a sua sponte duty to instruct the jury with CALCRIM No. 358, which instructs the jury to view the defendant's out-of-court statements with caution. After Woods filed his opening brief, the Supreme Court concluded that a trial court need not give this cautionary instruction sua sponte. (See *People v. Diaz* (2015) 60 Cal.4th 1176, 1190.) In light of *Diaz*, Woods abandoned this argument in his reply brief.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

A.C. met Woods in 2007 while playing World of Warcraft, an online "fantasy role-playing game." A.C. was living in Rhode Island with her husband and their three young boys, as well as A.C.'s then 12-year-old daughter from a previous relationship, C.C. A.C. spent many hours each night playing the game. C.C. also played for many hours each night.

A.C.'s marriage eventually failed, and she and C.C. left the family home and moved in with A.C.'s parents. The marriage ended in large part because A.C.'s husband was unhappy that A.C. was spending so much time online, to the detriment of the family.

In June 2008, then 31-year-old A.C. decided to pursue a romantic relationship with Woods, who was 19 years old at the time. A.C. invited Woods to come to Rhode Island. Woods drove to Rhode Island from California and stayed in a hotel. A.C. brought 12-year-old C.C. with her to meet Woods at the hotel. The three of them shared a bed that night, with C.C. in the middle. Sometime during the night, Woods touched C.C.'s vagina and breasts, and asked her to touch his penis. C.C. felt "not good" about what Woods had done. At a later point that night, Woods again touched C.C.'s vagina. She told him to stop, and he did. The next morning C.C. told her mother "that [she] didn't want to do that." A.C. "ignored" C.C., which made C.C. feel "sad."

4

After this visit with Woods, A.C. decided that she was in love with Woods. In July 2008, Woods came to Rhode Island and moved into A.C.'s parents' home, with A.C. and C.C. A.C. and Woods shared a room in the basement of the home, and C.C. had a room upstairs. Within two months of arriving in Rhode Island, Woods became physically abusive toward A.C.

During this time, Woods continued to sexually abuse C.C. The first time Woods sexually abused C.C. after he had moved to Rhode Island was at C.C.'s grandparents' house. Woods entered C.C.'s room, locked the door behind him, and touched her vagina under her clothes. C.C. complained to her mother, who responded, "deal with it." Woods then began to expect C.C. to perform oral sex on him "[d]aily." She did not want to do it, but she "couldn't say no." When C.C. told her mother about what Woods was doing to her, A.C. got "mad" at C.C., "[b]ecause she was jealous that [C.C.] got more attention than her." While in her grandparents' house, C.C. did not feel that she had a choice to stop performing oral sex on Woods.

At some point, Woods, A.C. and C.C. moved into an apartment together, where they lived for a year and a half. Woods began having intercourse with C.C. every day, and she continued to perform oral sex on him. C.C. did not want to have sex with Woods, but he told her "it's something [she] ha[d] to do," and she did not feel she had a choice. C.C. told A.C. that Woods was demanding sex from her, but A.C. did nothing to try to stop the abuse. C.C. witnessed Woods being physically abusive toward A.C. C.C.

5

believed that if she did not comply with Woods's demands for sex, Woods would hurt her or her mother.

In July 2010, Woods, A.C. and C.C. moved to San Diego where they lived with Woods's father, stepmother and grandmother. C.C. was 14 years old at the time of the move. By this point in time, A.C. and C.C. were financially dependent on Woods.

While in San Diego, Woods had "daily" intercourse and "almost daily" oral sex with C.C., and he sometimes, though rarely, would engage in anal sex with her.

A.C. would occasionally participate in the sexual encounters between C.C. and Woods, but C.C. did not "want that to happen." She felt "gross" when it happened. C.C. was afraid to say no and feared that Woods would hurt her or A.C. if C.C. did not "[do] what [Woods] demanded." Woods was, in fact, physically abusing A.C. during this time, on approximately a monthly basis, according to C.C. On one occasion, he knocked A.C. unconscious. Woods put his hands on C.C.'s shoulders and "kind of push[ed] [her], not so much that it would hurt [her], but more to scare [her]."

At some point, Woods began taking pornographic photographs and videos of himself, C.C., and A.C. engaged in various sex acts.

In the fall of 2010, C.C., who was 15 years old, learned that she was pregnant. Woods and A.C. told her to get an abortion. In mid-January 2011, A.C. drove C.C. to a Planned Parenthood facility to undergo an abortion procedure.[3] A.C. told the staff at Planned Parenthood that an unnamed boy had gotten C.C. pregnant. C.C. did not tell the

---

3     Because C.C. was in her second trimester, a two-day procedure was required.

truth about what had happened because she was concerned that she would get in trouble, and/or that her mother would get in trouble. Less than two weeks after C.C. had the abortion, Wood resumed having sex with her.

Woods insisted that A.C. homeschool C.C. He insisted that C.C. and A.C. call him "daddy," and he introduced C.C. to his coworkers as his daughter. A.C. would not let C.C. talk to her brothers, stepfather, or father on the telephone, even though they tried to call to speak with her.

C.C. testified that at some point in time, as early as when the three were living in Rhode Island, she developed romantic feelings for Woods and began to regard him as her boyfriend. She started to act "like a girlfriend." C.C. testified that she believed she "should make [herself] like him and it will make it easier." She also testified that once she began regarding Woods as her boyfriend, she and Woods went out on dates, and she occasionally initiated sex with him. C.C. told Woods that she loved him on a daily basis, and made plans for a future with Woods.

In March 2011, the three moved to Ramona to live with Woods's grandmother and her husband. Although C.C. had her own bedroom at the house, A.C. and Woods told her to sleep with them in their room and share their bed. Woods continued to have intercourse and oral sex with C.C. while they were living at the Ramona residence.

In November 2011, Woods, A.C. and C.C. moved into their own home. At the new house, C.C. slept in the bedroom with Woods, and A.C. slept in a different room C.C. would hear Woods engaging in violence against A.C. during this period. In early

7

January 2012, A.C. called the police after Woods was violent toward her and C.C. Woods had pushed A.C. down to the floor and had thrown C.C. onto the bed so hard that the bed broke. After A.C. and C.C. left the house, Woods sent A.C. threatening text messages. In the first, he said, "I'm going to find you and kill anyone you're with." Another said, "I'm killing myself and all the animals with me. Fuck you guys." A.C. was concerned that he would follow through on his threats.

The law enforcement officer who investigated the incident noted that Woods was six feet tall, and weighed 245 pounds. C.C. was "much smaller." C.C. did not mention the sexual abuse to the officer because her mother had told her not to say anything about it, and she feared she would "get taken away" from her mother.

Shortly after this incident, C.C. went to West Virginia to live with a "friend."

In early March 2012, Woods met Brittany M. online and they began a romantic relationship. Later that month, Brittany moved in with Woods at his father's home in Ramona. On August 9, 2012, Brittany called the sheriff's department to report that Woods possessed child pornography. Woods had given Brittany two computer memory sticks and asked her to destroy them. Brittany eventually discovered that the memory sticks and Woods's computer contained explicit pornographic images and videos involving C.C., whom Brittany knew was the daughter of Woods's ex-girlfriend, and a minor.

A few weeks after Brittany contacted the authorities, police executed a search warrant and seized Woods's computer, cellular telephones and a computer tower. A

8

forensic examiner found "thousands" of pornographic pictures and videos depicting C.C., Woods, and A.C. on these devices.

Woods and A.C. were arrested. A.C. cooperated with police and eventually pled guilty to committing lewd acts with a minor, felony child abuse, and felony accessory after the fact. A.C. testified for the prosecution at Woods's trial.

B.      *Procedural background*

By amended information, Woods was charged with six counts of forcible rape (Pen. Code,[4] § 261, subd. (a)(2); counts 1, 2, 7, 9, 12, 14); eight counts of forcible oral copulation of a minor aged 14 or older (§ 288a, subd. (c)(2)(C); counts 3, 4, 5, 6, 8, 10, 13, 15); one count of forcible oral copulation of a minor aged 14 or older in concert with another (§ 288a, subd. (d)(3); count 11); one count of felony child abuse (§ 273a, subd. (a); count 16); and one count of possession of child pornography (§ 311.11, subd. (a); count 17).[5] The information further alleged that Woods was subject to the One Strike

---

[4]      Further statutory references are to the Penal Code unless otherwise indicated.

[5]      With respect to counts 3, 4, 5, 6, 8, 10, 13, 15 (forcible oral copulation of a minor 14 or older) and 11 (forcible oral copulation of a minor 14 or older in concert), the charging document initially set out the basic offenses of forcible oral copulation (§ 288a, subd. *(c)(2)(A)*) and forcible oral copulation in concert (§ 288a, subd. *(d)(1)*)—neither of which involve allegations that the victim is a minor; a separate paragraph included in each count alleged that C.C. was a minor aged 14 years or older and that Woods violated the specific subdivisions of section 288a that set forth the substantive offenses of forcible oral copulation of a minor 14 years or older (§ 288a, subd. *(c)(2)(C)*) and forcible oral copulation of a minor 14 years or older in concert (§ 288a, subd. *(d)(3)*). As we discuss further in part III.A.3.a., *post*, the People acknowledge that this method of pleading was, at a minimum, unusual, and possibly erroneous, in that these allegations were pled as if

law in that he committed multiple offenses on separate occasions against the same victim, who was a minor 14 years or older, pursuant to section 667.61, subdivision (l) and (m). The information also alleged that as to counts 1 and 16, Woods inflicted great bodily injury on the victim, by causing her to become pregnant, pursuant to sections 12022.7, subdivision (a), 667.61, subdivision (l).

Woods pled guilty to count 17, possession of child pornography (§ 311.11, subd. (a)), prior to trial.

A jury convicted Woods on all of the remaining counts, and found true all of the allegations against him.

The trial court sentenced Woods to life in prison without the possibility of parole, plus an additional 53 years in prison.[6]

---

they were sentencing "enhancements" and/or additional allegations to the violations of section 288a, subdivision (c)(2)(A) and section 288a, subdivision (d)(1), despite the fact that violations of section 288a, subdivision (c)(2)(C) and section 288a, subdivision (d)(3) are themselves *substantive offenses*, and not enhancements or separate sentencing scheme allegations.

[6]    The sentence included an indeterminate term of life without the possibility of parole as to count 1, as a result of the jury's One Strike law true finding pursuant to section 667.61, subdivision (l).  The court stayed a three-year prison term enhancement pursuant to section 12022.7, subdivision (a) with respect to that count.  With respect to count 11, the court imposed the middle term of 10 years, plus three additional middle terms of nine years each as to counts 2, 12, and 14.  On counts 5 and 6, the court imposed consecutive middle terms of eight years.  On counts 3, 4, 8, 10, 13 and 15, the court imposed concurrent middle terms of eight years, and on counts 7 and 9, the court imposed concurrent middle terms of nine years. With respect to count 16, the court imposed a concurrent term of four years, and stayed the section 12022.7, subdivision (a) enhancement sentence pursuant to section 654.  With respect to count 17, the court imposed a concurrent term of two years.

10

Woods filed a timely notice of appeal.

## III.

## DISCUSSION

A. *The trial court prejudicially erred in failing to instruct on the lesser included offense of nonforcible oral copulation of a minor with respect to the charged counts of forcible oral copulation of a minor and forcible oral copulation of a minor in concert, but did not err in declining to instruct on unlawful sexual intercourse with a minor as a lesser included offense of forcible rape*

Woods contends that the trial court prejudicially erred in failing to instruct the jury on lesser included offenses to the charged counts of (a) forcible oral copulation of a minor aged 14 or older (counts 3, 4, 5, 6, 8, 10, 13, and 15), (b) forcible oral copulation of a minor aged 14 or older in concert (count 11), and (c) forcible rape (counts 1, 2, 7, 9, 12, and 14).

1. *Additional background*

The information charged Woods with eight counts of forcible oral copulation in violation of section 288a, subdivision (c)(2)(A),[7] and purported to allege as an enhancement "that in the commission and attempted commission of the above offense that the victim was a minor fourteen years of age and older, within the meaning of PENAL CODE SECTION 288a(c)(2)(C)."[8] The information also charged Woods with

---

[7] Section 288a, subdivision (c)(2)(A) provides:

"Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

[8] Section 288a, subdivision (c)(2)(C) provides:

11

one count of forcible oral copulation in concert, in violation of section 288a, subdivision (d)(1),[9] and purported to allege as an enhancement "that the victim was a minor fourteen years of age and older, within the meaning of PENAL CODE SECTION 288a(d)(3)."[10] In addition, as relevant to Woods's argument on appeal, the information charged Woods with six counts of forcible rape, in violation of section 261, subdivision (a)(2).[11] With respect to these charges, the information further alleged that Woods was subject to the One Strike law on the forcible rape counts, based on the allegation that the victim was a

---

"Any person who commits an act of oral copulation upon a minor who is 14 years of age or older, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 6, 8, or 10 years."

[9] Section 288a, subdivision (d)(1) provides in relevant part:
"Any person who, while voluntarily acting in concert with another person, either personally or by aiding and abetting that other person, commits an act of oral copulation (A) when the act is accomplished against the victim's will by means of force or fear of immediate and unlawful bodily injury on the victim or another person, or (B) where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat, or (C) where the victim is at the time incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be known to the person committing the act, shall be punished by imprisonment in the state prison for five, seven, or nine years."

[10] Section 288a, subdivision (d)(3) provides:
"Any person who, while voluntarily acting in concert with another person, either personally or aiding and abetting that other person, commits an act of oral copulation upon a victim who is a minor 14 years of age or older, when the act is accomplished against the victim's will by means of force or fear of immediate and unlawful bodily injury on the victim or another person, shall be punished by imprisonment in the state prison for 8, 10, or 12 years."

[11] Section 261, subdivision (a)(2) provides:
"(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:  [¶] . . . [¶]

"(2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

12

minor over 14 years of age, within the meaning of section 667.61, subdivisions (l) and (m).[12]

During discussions regarding the jury instructions, defense counsel requested that the trial court instruct the jury on the lesser included offense of unlawful *nonforcible* oral copulation of a minor, in violation of section 288a, subdivision (b)(1),[13] with respect to the charged offenses of forcible oral copulation of a minor aged 14 or older, in violation of section 288a, subdivision (c)(2)(C), and forcible oral copulation of a minor aged 14 or older in concert, in violation of section 288a, subdivision (d)(3). Defense counsel also requested that the court instruct on unlawful sexual intercourse with a minor, in violation of section 261.5, subdivisions (a) & (c), as a lesser included offense to the forcible rape charges (§§ 261, subd. (a)(2)).

The prosecutor objected to the court instructing on these offenses, arguing that "[t]here are no lessers that apply" in this case. He asserted that "the proposed lessers

---

12      Section 667.61, subdivisions (l) and (m) provide:
        "(l) Any person who is convicted of an offense specified in subdivision (n) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e), upon a victim who is a minor 14 years of age or older shall be punished by imprisonment in the state prison for life without the possibility of parole. If the person who was convicted was under 18 years of age at the time of the offense, he or she shall be punished by imprisonment in the state prison for 25 years to life.

        "(m) Any person who is convicted of an offense specified in subdivision (n) under one of the circumstances specified in subdivision (e) against a minor 14 years of age or older shall be punished by imprisonment in the state prison for 25 years to life."

13      Section 288a, subdivision (b)(1) provides:
        "Except as provided in Section 288, any person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year."

13

from the defense, all of them, contain elements that are in addition to the elements contained in the charged crimes. [¶] The elements are various age determinations. The charged crimes do not contain any age determinations at all in any of the elements. *It is the enhancements that contain the age determinations*." (Italics added.) Later, the prosecutor restated his position in a slightly different way: "The proposed lesser includeds from the defense are in fact different crimes with different elements, containing age determination elements that are not present at all in the charged crimes; in effect, additional proof requirements beyond those in the charged crimes."

The trial court stated, "Based upon the case law submitted by [the prosecutor], it would appear that the case—the Court would have to act contrary to that case law to instruct on any type of lesser included or lesser related." The court ultimately denied defense counsel's request for instructions on the offenses of unlawful but nonforcible oral copulation of a minor (§ 288a, subd. (b)(1)) and unlawful sexual intercourse with a minor (§ 261.5, subds. (a) & (c)).

2.      *Legal standards pertaining to instructing on lesser included offenses*

"For purposes of determining a trial court's instructional duties, [the Supreme Court has] said that 'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' " (*People v. Smith* (2013) 57 Cal.4th 232, 240.) "Under the [legal] elements test, if the statutory elements of the

14

greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.)

When applying the accusatory pleading test, "[t]he trial court need only examine the accusatory pleading." (*Smith, supra*, 57 Cal.4th at p. 244.) "[S]o long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater, the trial court must instruct on the lesser included offense." (*Ibid*.) However, enhancements may not be considered as part of an accusatory pleading for purposes of identifying lesser included offenses. (*People v. Wolcott* (1983) 34 Cal.3d 92, 96, 100-101.)

"In criminal cases, even absent a request, a trial court must instruct on the general principles of law relevant to the issues the evidence raises. [Citation.] ' "That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]" ' [Citation.] '[T]he existence of "any evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is

15

"substantial enough to merit consideration" by the jury.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 623.)

Any error in failing to instruct on a lesser included offense does not warrant reversal unless an examination of the entire cause, including the evidence, discloses that "it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred." (*People v. Breverman* (1998) 19 Cal.4th 142, 149; see *People v. Watson* (1956) 46 Cal.2d 818, 836.) A reasonable probability in this context does not mean more likely than not; it means a reasonable chance and not merely a theoretical or abstract possibility. (See *People v. Blakeley* (2000) 23 Cal.4th 82, 94; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

3.     *Analysis*

a.     *Nonforcible oral copulation of a minor as a lesser included offense of both forcible oral copulation of a minor aged 14 or older and forcible oral copulation of a minor aged 14 or older in concert*

Woods contends that nonforcible oral copulation of a minor, a violation of section 288a, subdivision (b)(1), is a lesser included offense of forcible oral copulation of a minor aged 14 or older, in violation of section 288a, subdivision (c)(2)(C), as well as a lesser included offense of forcible oral copulation of a minor aged 14 or older in concert, in violation of section 288a, subdivision (d)(3). He asserts that the trial court therefore had a sua sponte duty to instruct the jury with respect to section 288a, subdivision (b)(1), given the state of the evidence in this case, and further contends that the court's failure to so instruct was prejudicial.

16

The People concede that nonforcible oral copulation of a minor under section 288a, subdivision (b)(1) is a lesser included offense of forcible oral copulation of a minor under section 288a, subdivision (c)(2)(C), as well as a lesser included offense of forcible oral copulation of a minor in concert under section 288a, subdivision (d)(3). The People acknowledge that the prosecutor was incorrect in asserting at trial that the allegations as to C.C.'s age/minority with respect to the charged offenses of forcible oral copulation of a minor aged 14 or older were "enhancements." Rather, although the charging document in this case attempted to allege the violation of section 288a, subdivision (c)(2)(C) as a sentencing "enhancement" as to each applicable count, the People agree with Woods's position on appeal that section 288a, subdivision (c)(2)(C) (forcible oral copulation of a minor aged 14 or older) *is itself a substantive offense*, and not simply an enhancement allegation to the separate offense of violating section 288a, subdivision (c)(2)(A) (forcible oral copulation). The People similarly concede that section 288a, subdivision (d)(3) (forcible oral copulation of a minor aged 14 or older in concert) is an independent substantive offense, and is not simply an enhancement allegation to the separate offense of violating section 288a, subdivision (d)(1) (forcible oral copulation in concert).

Although the People concede that nonforcible oral copulation of a minor pursuant to section 288a, subdivision (b)(1) is a lesser included offense of both forcible oral copulation of a minor aged 14 or older under section 288a, subdivision (c)(2)(C) and forcible oral copulation of a minor aged 14 or older in concert, under section 288a, subdivision (d)(3), the People nevertheless contend that the trial court did not err in

17

declining to instruct the jury on this lesser included offense because, they argue, the evidence did not support an instruction on the lesser included offense.

We review de novo the trial court's failure to instruct on a lesser included offense (see *People v. Licas* (2007) 41 Cal.4th 362, 367; *People v. Manriquez* (2005) 37 Cal.4th 547, 581), and in doing so we consider the evidence in the light most favorable to the defendant (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5). Thus, the question is not whether substantial evidence supports Woods's conviction on the greater offenses of forcible oral copulation of a minor aged 14 or older and forcible oral copulation of a minor aged 14 or older in concert—a conclusion that we would readily reach. Rather, the question is whether, in assessing and weighing the evidence independently, the jury could have reasonably concluded that Woods committed nonforcible oral copulation of C.C., a minor, but not forcible oral copulation. Giving the record in this case a fair reading, we are compelled to conclude that there is evidence from which a reasonable jury could find that some or all of the charged acts of oral copulation with C.C., all of which were alleged to have occurred after the three had moved to California, and therefore, after the time that C.C. testified she began to regard Woods as her boyfriend, may not have been accomplished against C.C.'s will "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

As is required for purposes of determining whether the trial court erred in failing to instruct on a lesser included offense, we view the evidence in the light most favorable

18

to Woods. The evidence on which a fact finder could rely in concluding that Woods did not commit forcible oral copulation on C.C., but rather, engaged only in nonforcible unlawful oral copulation with her as a minor, includes C.C.'s testimony that at some point as early as when she and A.C. and Woods were living in Rhode Island, she began to regard Woods as her boyfriend. She acknowledged trying to look sexy for Woods, and said that they did enjoyable things together like playing video games, going shopping, going out to dinner, driving around in Woods's Jeep, and listening to music. C.C. testified that after she started regarding Woods as her boyfriend, with respect to their sexual encounters, she did not say "no" to Woods, she never asked him to stop, and never told him that it hurt her. C.C. also acknowledged that she initiated some of the sexual conduct between them. She told Woods things "that would turn [her] on," and he did those things. C.C. testified that Woods never "threatened to hurt [her] or kill [her] if [she] didn't have sex with him . . . ." She responded, "Yes" when asked whether "many times" she "found the sex to be fun," and said that it was "fulfilling."

In addition, when C.C. spoke with the counselors at Planned Parenthood, she told them that she was in a consensual sexual relationship. There was also evidence that C.C. and Woods made plans for a future together, and that C.C. told Woods daily that she loved him. She testified that during this period, she never told Woods that she did not want to have sex with him. This evidence is sufficient to support a finding that, as to one or more of the oral copulation counts, the oral copulation was not accomplished against

19

C.C.'s will "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

We are not convinced that the failure to instruct on the lesser included offense was, as the People maintain, harmless. Rather, given the state of the record, it appears reasonably probable that the trial court's failure to instruct the jury on the lesser included offense of nonforcible oral copulation of a minor affected the outcome of the trial on the counts involving forcible oral copulation and forcible oral copulation in concert. (See *People v. Breverman, supra*, 19 Cal.4th at p. 149, citing *People v. Watson, supra*, 46 Cal.2d at p. 836.) We therefore reverse Woods convictions on counts 3, 4, 5, 6, 8, 10, 11, 13, and 15.

  b.   *Unlawful intercourse with a minor as a lesser included offense of forcible rape*

Woods contends that a violation of section 261.5, subdivision (a), unlawful sexual intercourse with a minor, is a lesser included offense of the six counts of forcible rape of which he was convicted (counts 1, 2, 7, 9, 12, 14), and that the trial court committed reversible error in failing to instruct the jury as to this lesser offense.

Forcible rape as alleged against Woods in this case is set forth in section 261, subdivision (a)(2), which provides:

> "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:
>
> "[¶] . . . [¶]
>
> "(2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

20

Section 261.5, which Woods maintains is a lesser included offense of the offense of forcible rape alleged against him, provides in relevant part:

> "(a) Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age.
>
> "(b) Any person who engages in an act of unlawful sexual intercourse with a minor who is not more than three years older or three years younger than the perpetrator, is guilty of a misdemeanor.
>
> "(c) Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170.
>
> "(d) Any person 21 years of age or older who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years."

As an initial matter, the People contend that Woods is incorrect in asserting that section 261.5, subdivision (a) is a lesser included offense of forcible rape because section 261.5, *subdivision (a)* is not itself a substantive offense. The People maintain that subdivision (a) provides definitions with respect to the unlawful conduct that is proscribed in section 261.5 generally, but that it does not itself delineate the elements of a crime and/or prescribe punishment. We agree with the People that when considered in relation to the other provisions of section 261.5, subdivision (a) provides the definition of "unlawful sexual intercourse" (i.e., "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor"), as well as the definition of a "minor" (i.e., "a person under the age of 18 years") and an "adult" (i.e., "a person who is at least 18 years of age") for purposes of understanding the other

21

subdivisions of the section. We therefore agree with the People that subdivision (a) of section 261.5 does not by itself set forth a substantive offense. Rather, subdivision (a) acts in concert with the other subdivisions (subds. (b), (c), or (d)), to set out a substantive offense. (See CALCRIM No. 1070 [instruction for unlawful sexual intercourse when defendant was 21 or older and victim was under 16 years old at the time of the intercourse, pursuant to § 261.5, subds. (a) & (d)]; CALCRIM No. 1071 [instruction for unlawful sexual intercourse when defendant is more than three years older than the victim and the victim was under the age of 18 at the time of the intercourse, pursuant to § 261.5, subds. (a) & (c)]; and CALCRIM No. 1072 [instruction for unlawful sexual intercourse when defendant is not more than three years older or younger than the victim and the victim was under the age of 18 at the time of the intercourse, pursuant to § 261.5, subds. (a) & (b)].)

As a result, proving the offense of unlawful intercourse with a minor requires evidence that (1) the defendant had sexual intercourse with another person, (2) the defendant and the other person were not married to each other at the time of the intercourse, and (3) at the time of the intercourse, one of the following factual scenarios existed: (a) the defendant was 21 years of age or older and the victim was under the age of 16 (for a violation of subd. (d)); (b) the defendant was more than three years older than the victim and the victim was under the age of 18 (for a violation of subd. (c)); or (c) the defendant was not more than three years older or younger than the victim and the victim

22

was under the age of 18 (for a violation of subd. (b)).  (See CALCRIM Nos. 1070, 1071, and 1072.)

On the other hand, to prove that a defendant committed forcible rape requires evidence that (1) the defendant had sexual intercourse with a woman, (2) he and the woman were not married to each other at the time of the intercourse, (3) the woman did not consent to the intercourse, and (4) the defendant accomplished the intercourse by force, violence, duress, menace or fear of immediate and unlawful bodily injury.  (See CALCRIM No. 1000.)

Woods concedes that " 'unlawful sexual intercourse under section 261.5 is not, as a matter of statutory definition, an offense necessarily included within the offense of rape proscribed by section 261.' "  (*People v. Chapman* (1975) 47 Cal.App.3d 597, 603.)  He asserts, however, that unlawful sexual intercourse with a minor is a lesser included offense of forcible rape under the accusatory pleading test in this case because the information "specifically alleged within each of the forcible oral copulation charges that the victim was younger than 18 years old," and alleged that "all of the acts of forcible rape . . . were committed . . . while C.C. was a minor."

After careful consideration, we disagree.  We are not convinced that even under the accusatory pleading test any of the three potential offenses of unlawful sexual intercourse with a minor (§ 261.5, subds. (a) & (b); (a) & (c); and (a) & (d)) could be a lesser included offense of the charged offense of forcible rape (§ 261, subd. (a)(2)), in this case.

23

Each forcible rape charge against Woods contained the following language: "On or about . . . , GREY DAVID WOODS did unlawfully have and accomplish an act of sexual intercourse with C.C., a person not his/her spouse, against said person's will, by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury on said person and another, in violation of PENAL CODE SECTION 261(a)(2); to wit: . . . ." Each count also contained specific information about a location or event to distinguish the various counts from each other. The allegation as to the substantive offense of forcible rape in each of these counts does not include the allegation that C.C. was a minor, her age or Woods's age at the time of the intercourse.

In arguing that unlawful sexual intercourse with a minor is a lesser included offense of the forcible rape charges, Woods looks to the separate allegations, also included as to each forcible rape count, alleging that Woods is eligible to be sentenced under the One Strike law, an alternative sentencing scheme,[14] for the necessary factual allegation that C.C. was a minor at the time of the intercourse. Indeed, with respect to each of the six counts of forcible rape against Woods, the information additionally contains the following language:

---

[14]    The One Strike law has been referred to as an "alternative sentencing scheme" and/or a "penalty provision" (see, e.g., *People v. Carbajal* (2013) 56 Cal.4th 521, 534 [" 'the One Strike law is an alternative sentencing scheme' "]; *People v. Rodriguez* (2012) 207 Cal.App.4th 204, 211 ["the One Strike law . . . 'sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes' "]); *People v. Jones* (1997) 58 Cal.App.4th 693, 709 and fn. 9 ["We agree the one strike law is a 'penalty provision' " "even better, an 'alternative sentencing scheme.' "].)

24

"And it is further alleged that in the commission and attempted commission of the above offense that the victim was a minor over fourteen years of age, and that said defendant has been convicted in the present case and cases of committing an offense specified in subdivision (c) against the same victim on multiple separate occasions, pursuant to *People v. Valdez* (2011) 193 Cal.App.4th 1515, within the meaning of PENAL CODE SECTION 667.61 (m)."[15]

Whether an allegation made pursuant to the One Strike sentencing scheme may be considered together with the substantive charge to allege a single offense for purposes of the accusatory pleading test, as Woods suggests, is an open question. The parties agree that courts are not to look to *enhancement allegations* for purposes of determining whether an accusatory pleading describes the offense in such a way that if the offense is committed as specified, then a lesser offense is necessarily also committed. (See *People v. Wolcott* (1983) 34 Cal.3d 92, 96, 100-101 (*Wolcott*); see also *People v. Bragg* (2008) 161 Cal.App.4th 1385, 1398.) The parties disagree, however, as to how an allegation made pursuant to the One Strike law is to be treated for purposes of applying the accusatory pleading test, i.e., whether it should be considered as part of the accusatory pleading as a whole, as Woods urges, or rather, whether it should be regarded as akin to an "enhancement" allegation, and therefore, not be considered for purposes of determining lesser included offenses, as the People urge.

---

[15] It is not immediately apparent from the pleading to what it is referring when it discusses "committing an offense specified in subdivision (c)." This may be a reference to subdivision (c) of section 667.61, which establishes that section 667.61 applies to a number of offenses, including "Rape, in violation of paragraph (2) or (6) of subdivision (a) of Section 261." (§ 667.61, subd. (c)(1).) Count 1 also included an additional One Strike allegation as follows:

"And it is further alleged that in the commission of the above offense that the victim was a minor over fourteen years of age, and that said defendant personally inflicted great bodily injury, TO WIT: PREGNANCY, on the victim and another person in violation of Section 12022.7, within the meaning of PENAL CODE SECTION 667.61(l).

25

We conclude that the People's argument is more persuasive. Although technically not an "enhancement" allegation, an allegation of specific facts that would place the defendant on notice that he is subject to the alternative sentencing scheme of the One Strike law is similar to an "enhancement" in ways that are significant for purposes of making determinations as to whether an instruction on a lesser included offense is required.

In *Wolcott, supra*, 34 Cal.3d at page 101, the Supreme Court explained its reasons for adopting the rule that enhancement allegations should not be considered to be part of the "accusatory pleading" for purposes of defining lesser included offenses. First, a majority of appellate courts had relied on language that the enhancement provision at issue in *Wolcott* " 'does not prescribe a new offense but merely additional punishment for an offense in which a firearm is used' " in reaching the conclusion that an " 'allegation of firearm use for purposes of Penal Code section 12022.5 is not to be considered in determining whether the accusation encompasses a lesser included offense.' " The *Wolcott* court questioned two appellate decisions that had reached a different conclusion concerning the use of the personal use enhancement allegations for determining lesser included offenses, suggesting that a defendant might not actually be on notice that he should "nevertheless controvert a 'use' enhancement to protect against conviction for a lesser offense of assault with a deadly weapon" where that defendant has a "good defense to a robbery charge." (*Wolcott, supra*, at p. 101.) The *Wolcott* court also concluded that the use of enhancement allegations for purposes of determining lesser included offenses

26

is unworkable in a practical sense, "even if California could constitutionally consider enhancement allegations as part of the accusatory pleading for the purpose of defining lesser included offenses." (*Ibid.*) The *Wolcott* court reasoned:

> "Not only is the weight of authority against [a rule allowing consideration of enhancement allegations as part of the accusatory pleading for the purpose of defining lesser included offenses], but the result would be to confuse the criminal trial. Present procedure contemplates that the trier of fact first determines whether the defendant is guilty of the charged offense or a lesser included offense, and only then decides the truth of any enhancements. (See CALJIC No. 17.19.) The sentencing judge then decides whether to use the fact found as an enhancement to impose the upper term of the sentence, or to enhance the sentence. (Cal. Rules of Court, rule 441.) *This orderly, step-by-step procedure would become muddled if evidence of the enhancement must be considered in determining guilt of a lesser offense.*" (*Wolcott, supra*, at p. 101, italics added.)

The Supreme Court has noted the similarity between the factual allegations necessary for application of the One Strike law and the factual allegations necessary for statutory sentencing enhancements. In *People v. Anderson* (2009) 47 Cal.4th 92, 102-103 (*Anderson*), the Supreme Court compared the operation of the One Strike law with the operation of other "sentencing allegations" (such as the Three Strikes law and statutory enhancements) as follows:

> "[The One Strike law (§ 667.61)] mandates an indeterminate sentence of 15 or 25 years to life in prison when the jury has convicted the defendant of a specified felony sex crime (§ 667.61 [listing applicable crimes]) and has also found certain factual allegations to be true (§ 667.61, subds. (d), (e)). Most of these factual allegations concern the manner in which the underlying substantive offense was committed. *As with the Three Strikes law and statutory sentencing enhancements, the jury must first decide whether all the elements of the underlying substantive crime have been proven.* If not, it returns an acquittal and the case is over. If the jury convicts on the substantive crime, it then independently determines whether the factual allegations that would bring the defendant under the One Strike sentencing scheme have also been proven. Because the sentencing allegations have the potential to increase punishment, the defendant has a Sixth Amendment right to have their truth decided by a jury. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.)" (*Anderson, supra*, 47 Cal.4th at pp. 102-103, italics added.)

In this case, the One Strike allegations against Woods operated in the same way that the enhancement allegation operated in *Wolcott*, as a review of the verdict forms

27

confirms. The verdict forms demonstrate that the jury first determined Woods's guilt on the substantive offense of forcible rape, which did not involve any determination as to the victim's age. Only *after* the jury determined that Woods was guilty as to each count of forcible rape did the jury then answer the separate question whether it found "that in the commission of the above offense the victim was a minor over fourteen years of age or older and that said defendant has been convicted in the present case of committing a separate violation of PC 261(a)(2), 288a(c)(2)(A), or PC 288a(d)(1) against the same victim (C.C.) on a separate occasion, within the meaning of PC 667.61 (m)." Thus, the jury did not consider the evidence as to the One Strike allegation in determining Woods's guilt as to the forcible rape charge; as in *Wolcott*, the "orderly, step-by-step procedure" would have "become muddled" if the jury had been required to consider evidence of the One Strike law allegation "in determining guilt of a lesser offense." (*Wolcott, supra*, 34 Cal.3d at p. 101.)

Because of the similarity between statutory sentencing enhancement allegations and One Strike law allegations, we conclude that the rule announced in *Wolcott* regarding enhancement allegations should also apply to One Strike law allegations. Under this rule, we do not consider the sentencing allegations for purposes of determining whether the accusatory pleading describes a greater offense in such a way that all the elements of a lesser offense are included.

Absent the One Strike law allegations set forth with respect to each forcible rape count alleged in the information, the forcible rape counts do not encompass the lesser

28

offense of unlawful intercourse with a minor.[16] We therefore conclude that the trial court did not err in failing to instruct the jury regarding the offense of unlawful intercourse with a minor with respect to the charged counts of forcible rape.

B.    *The trial court did not err in instructing the jury on the definition of consent consistent with section 261.6*

Woods contends that his convictions on counts 1 through 15 should be reversed because the trial court prejudicially erred in instructing the jury on the definition of "consent."[17] Specifically, he maintains that the definition that the court provided to the jury was "improperly argumentative, it [was] misleading, it eased the prosecution's burden of proof, it undermined appellant's defense, and it came dangerously close to directing a verdict in favor of the prosecution."

During discussions among the attorneys and the court regarding jury instructions, the prosecutor requested that the court provide the jury with the definition of consent as set forth in section 261.6.[18] The prosecutor argued, "I do not believe consent is

---

[16]    The three iterations of the offense of unlawful intercourse with a minor include not only the element of the victim's minority, but also require that the People prove the age of the perpetrator (either on its own or relative to the age of the victim) at the time of the intercourse. The information did not allege Woods's age, or his age relative to C.C.'s, with respect to the forcible rape counts.

[17]    Because we are reversing Woods's convictions on counts 3, 4, 5, 6, 8, 10, 11, 13, and 15, we consider this argument only with respect to counts 1, 2, 7, 9, 12, and 14.

[18]    Section 261.6 provides:
        "In prosecutions under Section 261, 262, 286, 288a, or 289, in which consent is at issue,
        'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an

29

adequately defined for this case." Defense counsel did not object to the court giving the definition of consent set forth in section 261.1, but to the contrary, stated "It's an accurate statement of the law." The court granted the prosecutor's request.

The trial court subsequently instructed the jury on consent as follows: "Consent means positive cooperation in an act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved. A current or previous dating or marital relationship shall not be sufficient to constitute consent where consent is at issue."

The jury was also instructed that the burden is on the prosecution to prove the lack of consent for each count of forcible rape and forcible oral copulation with a minor. With respect to those offenses, specifically, the jury was again told, "In order to consent, a person must act freely and voluntarily and know the nature of the act."

The parties disagree as to whether Woods's failure to object to the instruction amounts to forfeiture of this argument. The People assert that Woods has forfeited the argument, and Woods contends that because the issue of consent was a principle of law necessary to the jury's understanding of the case, the court was required to provide a correct instruction even in the absence of an objection by defense counsel. In any event,

exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved.

"A current or previous dating or marital relationship shall not be sufficient to constitute consent where consent is at issue in a prosecution under Section 261, 262, 286, 288a, or 289.

"Nothing in this section shall affect the admissibility of evidence or the burden of proof on the issue of consent."

30

however, both parties agree that Woods may raise this instructional claim in the context of a claim of ineffective assistance of counsel, and that on that basis, we may review the merits of Woods's contention. (See *People v. Williams* (1998) 61 Cal.App.4th 649, 657 [addressing the merits of a claim, despite its forfeiture, to preclude a claim of ineffective assistance of counsel].) We conclude that Woods's claim is without merit.

Woods contends that "[t]he problem with the special instruction given appellant's jury is that it is improperly argumentative, it is misleading, it eased the prosecution's burden of proof, it undermined appellant's defense, and it came dangerously close to directing a verdict in favor of the prosecution by providing that a current or previous dating relationship 'shall not be sufficient to constitute consent.' " He argues that the standard modifications provided in CALCRIM Nos. 1000 and 1015 are "appropriately neutral, and they appropriately direct the jury to consider the evidence of a prior dating relationship in determining whether there was consent, while also advising the jury that evidence of such a prior relationship is not by itself enough to constitute consent."

The relevant portion of the standard instruction that may be given when warranted as provided in CALCRIM No. 1000 regarding forcible rape is as follows: "Evidence that the defendant and the woman (dated/were married/had been married) is not enough by itself to constitute consent." Similarly, the relevant portion of the standard instruction that may be given when warranted as provided in CALCRIM No. 1015 regarding forcible oral copulation is as follows: "Evidence that the defendant and the person (dated/were married/had been married) is not enough by itself to constitute consent." Woods focuses

31

on the "is not enough by itself" language of these standard instructions to suggest that the instruction that the court provided in this case, which tracks the language of section 261.6 and does not include "is not enough by itself" language, was improper. He also distinguishes the instruction given in this case from the instruction approved in *People v. Gonzalez* (1995) 33 Cal.App.4th 1440, 1443 (*Gonzalez*), on which the People rely.

In *Gonzalez*, the trial court instructed the jury with a modified version of former CALJIC No. 1.23.1, which was based on section 261.6, as follows: " 'In prosecutions under Penal Code section 288a, the word 'consent' means positive cooperation in an act or attitude as an exercise of free will. The person must act freely and voluntarily and must have knowledge of the nature of the act or transaction involved. [¶] The fact, if established, that the defendant and Diane [A.] engaged in a current or previous dating relationship does not by itself constitute consent.' " (*Gonzalez, supra*, 33 Cal.App.4th at p. 1443, fn. 1.) The *Gonzalez* court rejected the defendant's contention that the trial court had erred in giving CALJIC No. 1.23.1, concluding that the instruction "did not shift the burden of proof on consent to the defense or create a presumption of lack of consent," and stating that "[t]he instruction merely defined consent." (*Gonzalez, supra*, at p. 1444.) Woods challenges the People's reliance on *Gonzalez*, arguing that *Gonzalez* is not on point because "there is a significant difference between instructing a jury that evidence of a dating relationship 'is not by itself sufficient to constitute consent,' and instructing a jury such evidence 'shall not be sufficient.' "

32

We are unconvinced that the differences between the instruction provided by the trial court in this case and the standard modifications provided for in CALCRIM Nos. 1000 and 1015 and/or the instruction provided in *Gonzalez, supra*, 33 Cal.App.4th at page 1443, footnote 1, are significant in the manner that Woods contends. The trial court instructed the jury with a proper statement of the law, which is that "[a] current or previous dating or marital relationship shall not be sufficient to constitute consent where consent is at issue." (§ 261.6.) The fact that the court instructed the jury that such evidence "shall not be sufficient," without expressly adding "in and of itself," or without stating "is not enough by itself," or "is not by itself sufficient," does not mean that the court's instruction was argumentative or that it directed a verdict in favor of the prosecution, nor does it mean that the instruction as given lessened the prosecution's burden to prove a lack of consent. Implicit in the phrase "shall not be sufficient" is the concept that evidence of the existence of a current or previous dating relationship, *alone*, is not enough to demonstrate that the victim gave consent. The instruction did not tell the jury that evidence of a dating relationship was irrelevant to the question of consent, or that the jury was not to consider such evidence. Rather, the instruction simply informed the jury that evidence of a dating relationship *was not enough to establish consent*. This is a correct statement of the law. We conclude that the trial court did not err in instructing the jury as to the law regarding consent in this manner.

33

C.    *There is substantial evidence to support the jury's great bodily injury finding*

Woods challenges the sufficiency of the evidence to support the jury's "true" findings on the great bodily injury enhancement allegations related to counts 1 and 16. We conclude that there was sufficient evidence to support these findings.

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one.  ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]" '  [Citations.]  [¶]  ' "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' "  (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)

The determination whether a particular victim has suffered physical harm that amounts to "great bodily injury" is typically a question of fact to be resolved by the jury. (*People v. Cross* (2008) 45 Cal.4th 58, 63 (*Cross*).)  Great bodily injury is defined in section 12022.7, subdivision (f), as "significant or substantial physical injury."  However,

34

"the injury need not be so grave as to cause the victim 'permanent,' 'prolonged,' or 'protracted' bodily damage." (*Cross, supra*, at p. 64)  "Proof that a victim's bodily injury is 'great' . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*Id*. at p. 66.)

In *Cross, supra*, 45 Cal.4th at pages 65-66, the Supreme Court rejected the idea that a pregnancy without medical complications that resulted from a defendant's unlawful, though not forcible, intercourse with a minor could never be sufficient to support a finding of great bodily injury.  The *Cross* court concluded that evidence that a 13-year-old who had never been pregnant before carried a fetus for 22 weeks before undergoing an abortion was sufficient to support the jury's great bodily injury finding. (*Id*. at p. 66.)

Similarly, the appellate court in *People v. Meneses* (2011) 193 Cal.App.4th 1087 affirmed a jury's great bodily injury finding on the ground that the victim was impregnated at age 12, and delivered a baby at age 13.  (*Id*. at p. 1091.)  The court considered evidence of the length of her labor, and the fact that the victim had stated that the delivery "hurt 'a lot,' " in concluding that the evidence was sufficient to support the finding.  (*Ibid*.)  The *Meneses* court rejected the defendant's contention that the lack of evidence of the size of the fetus or the fact that the victim did not immediately realize she was pregnant demonstrated that there was insufficient evidence of great bodily injury as a result of the pregnancy.  (*Ibid*.)

35

In this case, the fact that C.C. was 15 years old, not 13 or 12 years old like the victims in *Cross* and *Meneses*, is not determinative. Rather, it was one fact, among many, for the jury to weigh. C.C.'s minority, and the fact that she had never been pregnant before and underwent a second-trimester abortion,[19] supports the jury's determination that her pregnancy constituted great bodily injury.

Woods asks this court to reweigh the evidence and reach a result different from the result reached by the jury in this case. We decline to do so. The Supreme Court in *Cross* very clearly concluded that impregnation alone may be sufficient to support a finding of great bodily injury. Although the *Cross* court declined to create a bright line rule that a pregnancy will *always* constitute great bodily injury, it is clear that a jury may, in a particular case, decide that the defendant inflicted great bodily injury on a victim based on evidence of a pregnancy caused by the defendant's unlawful intercourse with the victim. We conclude that substantial evidence supports the jury's finding that Woods inflicted great bodily injury on 15-year-old C.C. by causing her to become pregnant.

D.      *The trial court did not err in giving the jury a modified great bodily injury instruction*

Woods further contends that the trial court prejudicially erred in instructing the jury with respect to the meaning of "great bodily injury." Woods asserts that the trial

---

19      C.C.'s abortion procedure took two days to perform, required local anesthesia, and involved "conscious sedation" that was required because the procedure would have otherwise been "extremely painful."

court instructed the jury with a potentially misleading, argumentative and improper pinpoint instruction.

At the prosecutor's request, and over a defense objection, the trial court instructed the jury with respect to great bodily injury as follows:

> "If you find the defendant guilty of the crimes charged in Counts 1 and 16, you have to decide whether or not the People have proven the additional allegation that the defendant personally inflicted great bodily injury on C.C. during the commission of the crime. You must decide whether the People have proved this allegation for each crime, and return a separate finding for each crime.
>
> "Great bodily injury again means significant or substantial physical injury. It is injury that is greater than minor or moderate harm.
>
> "Committing the crime of forcible rape is not by itself the infliction of great bodily injury. *Depending on your findings about the evidence of this case, causing a woman to become pregnant can be the infliction of great bodily injury.*
>
> "The People have the burden of proving each allegation beyond a reasonable doubt. If they fail to meet that burden, you must find that the allegation has not been proven." (Italics added.)

Woods takes issue with the italicized portion of the instruction. Woods contends that this portion of the instruction pinpointed particular evidence, as opposed to the prosecution's theory of the case, and "invited the jury to draw an inference of great bodily injury in favor of the prosecution based on the specific evidence of the pregnancy in this case."

"A trial court must instruct on the *law* applicable to the facts of the case." (*People v. Mincey* (1992) 2 Cal.4th 408, 437.) "[L]egally correct and factually warranted pinpoint instructions designed to elaborate and clarify other instructions should be delivered upon request." (*People v. Hughes* (2002) 27 Cal.4th 287, 362, italics omitted.) However, a court must avoid giving an argumentative instruction, i.e., "an instruction 'of such a

37

character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence.' " (*Mincey, supra*, at p. 437; see also *People v. Wright* (1988) 45 Cal.3d 1126, 1135 [an argumentative instruction "invite[s] the jury to draw inferences favorable to [a party] from specified items of evidence on a disputed question of fact, and therefore properly belongs . . . in the arguments of counsel to the jury"].)

We disagree with Woods's contention that the trial court erred in providing the jury the instruction regarding pregnancy and great bodily injury. The instruction is a correct statement of the law, since it is clear that a pregnancy can provide the basis for a great bodily injury finding. (See *Cross, supra*, 45 Cal.4th at pp. 67-68.) Further, this was not an improper or argumentative pinpoint instruction. The instruction did not imply that the jury should draw any particular conclusion. Rather, the instruction merely informed the jury that the law permits a finding of great bodily injury on the basis of a pregnancy. The instruction did not suggest to the jury that it would *have* to find that Woods inflicted great bodily injury on C.C. if it found that he had caused her to become pregnant. Rather, it told the jury that it could make such a finding if it concluded that the pregnancy in this case constituted a "significant or substantial physical injury."

Importantly, there is no meaningful difference between the instruction given in this case and the instruction given by the trial court in *Cross, supra*, 45 Cal.4th at page 66. Here, the court instructed the jury that a pregnancy "can" constitute the infliction of great bodily injury. In *Cross*, the court instructed the jury that a pregnancy *or* an abortion "may constitute great bodily injury." (*Ibid*.) Given the nature of the defendant's claims

38

in that case, the Supreme Court considered whether the trial court erred in instructing the jury that an abortion "may constitute great bodily injury." (*Id*. at pp. 66-69.) The *Cross* court concluded that the abortion aspect of the instruction was technically a correct statement of the law, but further concluded that it was inapplicable to the case because there was no allegation that the defendant had himself performed the abortion. (*Ibid*.) Although the defendant in *Cross* apparently did not argue that the trial court's instruction that a pregnancy "may constitute great bodily injury" was an improper pinpoint instruction, it is worthwhile to note that the *Cross* court nevertheless appears to have generally accepted that the portion of the trial court's instruction informing the jury that a pregnancy "may constitute great bodily injury" was a correct statement of the law. (*Ibid*.) The Supreme Court's analysis suggests that, apart from the instruction's reference to an abortion, which was not relevant under the facts of that case, the instruction informing the jury that a pregnancy may constitute great bodily injury was otherwise accurate and appropriate.

In this case, as in *Cross*, a jury would have understood that it could find that a pregnancy constituted great bodily injury, *but that it need not do so*. The juries in both this case and in *Cross* were free to consider the testimony and the other evidence, and to reach a reasoned conclusion based on that evidence. It is not reasonable to conclude that the instruction that the trial court gave suggested to the jury that it must, or even should*,* find that Woods inflicted great bodily injury if it found that he caused C.C. to become

39

pregnant. We conclude that the trial court's modification of the great bodily injury instruction was not error.

E.    *There is no cumulative error*

Woods contends that the cumulative effect of the errors that he alleges requires reversal. "Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) We have concluded that only one of Woods's asserted claims of error has merit, and we are reversing the convictions that are implicated as to that claim of error. We conclude that his other claims of error are without merit. As a result, there are no additional errors as to which the cumulative effect would require reversal of any other counts.

IV.

DISPOSITION

The judgment is reversed. Woods's convictions on counts 3, 4, 5, 6, 8, 10, 11, 13, and 15 are reversed, and his sentences as to these counts are vacated. Woods's remaining convictions are affirmed.

The People may retry Woods on the charges of forcible oral copulation of a minor 14 or older and forcible oral copulation of a minor 14 or older in concert within the applicable time period. In the event that Woods is retried on these charges and convicted on some or all of the charges, the court shall resentence Woods with respect to all of the counts on which he stands convicted, including the counts affirmed in this opinion.

40

In the event that the People elect not to retry Woods on the reversed counts, the trial court shall resentence Woods with respect to the counts that we have affirmed in this opinion.

The trial court may conduct any necessary ancillary proceedings consistent with this opinion.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

41