Filed 8/8/23  P. v. Mejia-Hernandez CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>OSCAR ARMANDO MEJIA-HERNANDEZ,<br><br>        Defendant and Appellant. | A164223<br><br>(Contra Costa County<br>Super. Ct. No. 51901594) |

Oscar Armando Mejia-Hernandez scratched, hit, pushed, and choked his wife, Jane Doe; a jury convicted him of felony inflicting corporal injury on a spouse or parent of a child in common and misdemeanor assault, and the trial court suspended imposition of sentence and placed him on probation. Hernandez appeals.  We reverse the misdemeanor assault conviction in light of the Attorney General's concession that it is a lesser included offense of the felony corporal injury conviction and premised on the same underlying conduct.  In all other respects, we affirm.

## BACKGROUND

On an evening in August 2018, Hernandez, Doe, and their two children attended a birthday party in Hayward.  Afterward, Doe drove the family home to their apartment in Antioch.  On the drive, Hernandez — who was "tipsy" — began arguing with Doe.  Once home, he became physical.  He

1

grabbed Doe by her arms and threw her on the sofa, scratched her arms, hit her, and tore her shirt. He also squeezed Doe's neck with both hands, leaving a mark. Doe called 911, but Hernandez took away the phone just after she gave the dispatcher their address.

Approximately 15 minutes later, a law enforcement officer arrived at the apartment. Through the closed front door, the officer heard arguing, then "a loud bang from the interior side of the door as if something hit the door." He looked through a window and saw Hernandez and Doe having a "heated argument." Hernandez was preventing Doe — whose shirt was torn — from opening the door. Eventually, the door unlocked. The officer pushed the door open, went inside, and handcuffed Hernandez. Doe was "very distressed. She was crying and shaking a little bit."

The officer noticed redness at the base of Doe's neck and 10-inch-long scratches on her arm, both of which "appeared to be fresh." A second police officer arrived; he noticed a "slight red mark" at the base of Doe's neck which seemed consistent with being "grabbed on the neck." Doe told an officer her forearms were "burning" and that she was still in "a little bit of pain." The officers interviewed Doe. She said Hernandez hit her arm with a closed fist; he also tried to choke her while her children were present. She asked the officers for a temporary restraining order. A recording of Doe's interview was played for the jury, and the trial court admitted photographs of her injuries into evidence. Hernandez testified. He acknowledged arguing with Doe and pushing her against the sofa, but he claimed he did so only after she closed the front door on his fingers.

In 2021, a jury convicted Hernandez of inflicting corporal injury on a spouse (Pen. Code, § 273.5, subd. (a)),[1] and misdemeanor assault (§ 240), a

_____

[1] Undesignated statutory references are to the Penal Code.

2

lesser included offense of assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)). The trial court suspended imposition of sentence and placed him on probation with various conditions, among them that he serve jail time.

## DISCUSSION

Hernandez challenges the convictions on three grounds, each of which we address in turn.

### I.

At the outset, Hernandez contends the trial court erred by giving a modified version of CALCRIM No. 840, the pattern instruction on inflicting corporal injury.

Both parties requested CALCRIM No. 840. As relevant here, the instruction states that to establish a violation of section 273.5, subdivision (a), the prosecution must prove the "defendant willfully inflicted a physical injury" on a certain class of victims and the "injury inflicted by the defendant resulted in a traumatic condition." (CALCRIM No. 840 (2021 ed.).) The instruction defines "traumatic condition" as "a wound or other bodily injury, whether minor or serious, caused by the direct application of physical force." (*Ibid.*) The bench notes to CALCRIM No. 840 suggest that if there is evidence "the traumatic condition resulted from strangulation or suffocation," the trial court "consider instructing according to the special definition" provided in section 273.5, subdivision (d). (Bench Notes to CALCRIM No. 840.) Subdivision (d), in turn, defines "traumatic condition" as a "condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force. . . . '[S]trangulation' and 'suffocation' include impeding the normal breathing or

3

circulation of the blood of a person by applying pressure on the throat or neck." (§ 273.5, subd. (d).)

Over defense counsel's objection, the trial court instructed the jury with the language suggested in the bench notes as follows: "a traumatic condition is a wound or other bodily injury, whether it's minor or serious, that's caused by a direct application of physical force. *It includes, but it isn't limited to, injury as a result of strangulation or suffocation. The terms strangulation and suffocation, they include, but they're not necessarily limited to . . . impeding the normal breathing or circulation of the blood of a person by applying pressure of the throat.*" (Italics added.)

On appeal, Hernandez asserts the "suffocation and strangulation" language in the modified version of CALCRIM No. 840 is argumentative.[2] We address — and reject — the argument on the merits. " 'A trial court must instruct on the *law* applicable to the facts of the case.' [Citation.] '[L]egally correct and factually warranted pinpoint instructions designed to elaborate and clarify other instructions should be delivered upon request.' [Citation.] However, a court must avoid giving an argumentative instruction, i.e., 'an instruction "of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence." ' " (*People v. Woods* (2015) 241 Cal.App.4th 461, 488, brackets in original.)

The modified version of CALCRIM No. 840 is not argumentative. The challenged language did not suggest to the jury that it *was required to* conclude Hernandez inflicted a traumatic condition if it found he strangled or suffocated Doe. Instead, it informed the jury that a finding of traumatic condition may be based on an injury caused by a direct application of physical

---

[2] As Hernandez appears to acknowledge, the challenged language is both a correct statement of the law and supported by the evidence.

4

force, including strangulation or suffocation, and it provided a nonexclusive definition of those terms. (See *Woods*, *supra*, 241 Cal.App.4th at pp. 488–489 [instruction defining great bodily injury was not argumentative]; *People v. Campos* (2007) 156 Cal.App.4th 1228, 1244 [inclusion of term " 'kill zone' " did not render pattern jury instruction argumentative].) We conclude the trial court did not err by delivering the instruction. (See *Woods*, *supra*, 241 Cal.App.4th at p. 489.) Having so concluded, we need not address Hernandez's claim that the asserted instructional error was prejudicial.

## II.

Next, Hernandez argues insufficient evidence supports the jury's finding that Doe suffered a traumatic condition, an essential element of inflicting corporal injury in violation of section 273.5. As stated above, the term " 'traumatic condition' means a condition of the body, such as a wound, or external or internal injury, . . . whether of a minor or serious nature, caused by physical force." (*Id.*, subd. (d).) As Hernandez acknowledges, even a " 'minor' injury" — such as bruising or redness — may constitute a traumatic condition. (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085; *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771.) In evaluating a claim of insufficient evidence, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) We presume " 'in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Ibid.*)

Substantial evidence supports the jury's finding that Hernandez inflicted corporal injury resulting in a traumatic condition. When law

enforcement officers arrived 15 minutes after Doe called 911, her arms were burning and she was in pain.  She told the officers Hernandez hit, scratched, pushed, and choked her, and they observed her injuries — fresh redness at the base of her neck and lengthy scratches on her arm.  The trial court admitted contemporaneous photographs of her injuries into evidence.  Thus, ample evidence established Doe suffered an external injury as a result of physical force applied by Hernandez.  (§ 273.5, subd. (d); *People v. Beasley*, *supra*, 105 Cal.App.4th at pp. 1085–1086.)

Hernandez's attempt to downplay the severity of Doe's injuries is unpersuasive; it is well-settled we "do not reweigh the evidence or exercise independent judgment" when evaluating a challenge to the sufficiency of the evidence.  (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)  And his reliance on *People v. Abrego* (1993) 21 Cal.App.4th 133 is unavailing.  There, the record was devoid of "evidence of even a minor injury" sufficient to constitute a traumatic condition because the victim testified she was not injured during the altercation and that she felt no pain, and an investigating officer "did not observe any injuries."  (*Id.* at pp. 135–136, 138.)  This case bears no resemblance to *Abrego*.

## III.

Finally, Hernandez asserts the misdemeanor assault conviction must be reversed because simple assault is a lesser included offense of inflicting corporal injury, and he may not be convicted of both offenses based on a single act or continuous course of conduct.  The Attorney General agrees simple assault is a lesser included offense of inflicting corporal injury (*People v. Serrano* (2022) 77 Cal.App.5th 902, 919–920), and concedes the assault and corporal injury convictions are premised on the same conduct.  We accept the concession.  During closing argument, the prosecutor elected to rely on the

"same strangulation effort" for both offenses.  When "the prosecution has made an election, under circumstances where a unanimity instruction would otherwise have been required, then we, too, are bound by that election." (*People v. Brown* (2017) 11 Cal.App.5th 332, 341.)

We decline the Attorney General's perfunctory request to stay the misdemeanor assault conviction.  When, as here, " ' "the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed." ' "  (*People v. Serrano, supra*, 77 Cal.App.5th at p. 920; *People v. Medina* (2007) 41 Cal.4th 685, 702.)

## DISPOSITION

The misdemeanor assault conviction (§ 240) is reversed and the trial court is directed to prepare an amended probation order so reflecting.  In all other respects, the judgment is affirmed.

BOWEN, J.[*]


WE CONCUR:


HUMES, P. J.


BANKE, J.


A164223N


---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8