Filed 12/13/22 P. v. Esparza CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | C091260 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20170013674) |
| v. | |
| JESSE ADRIAN ESPARZA, | |
| Defendant and Appellant. | |

After a member of his group stole a 12-pack of beer, defendant Jesse Adrian Esparza shot and beat a store employee trying to recover the beer. A year later, on Valentine's Day, 2017, defendant shot at several men who asked about the well-being of his then-girlfriend, killing one of the men. A jury found defendant guilty of one count of premeditated murder, three counts of attempted premeditated murder, one count of robbery, and two counts of being a felon in possession of a firearm. Defendant contends the trial court erred in failing to instruct the jury on voluntary intoxication for the Valentine's Day murder and his upper term sentences must be remanded for resentencing

1

in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1) (Senate Bill 567). We affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

### Liquor Store Robbery

The robbery was caught on the liquor store's surveillance system. On January 16, 2016, defendant and three other men drove up to the liquor store at about 1:00 a.m. Two men got out of the car and went into the store. The third man stayed in the car. While the two men were in the store, defendant got out of the car and wandered around the parking area, swaying, and using his cellular telephone; watching something, taking selfies, rapping or talking to someone on a video call. At one point, the man in the car got out, handed defendant a gun, and returned to the car.

Defendant walked into the store and then walked out but stood in the doorway for a few seconds before walking away.

The video shows one of the men from the car running out of the store with a 12-pack of beer. A store employee chased after him.

The last thing the store employee remembered was defendant turning around and then the employee got hurt. The video shows defendant shot the employee as the employee approached him and then defendant attacked him on the ground after the employee fell. The men drove away.

The employee returned to the store bleeding profusely from his head and arm. He was shot four times. He also had injuries to his nose, top of his head, back of his head and ear.

### Valentine's Day Murder

A year later, on Valentine's Day, 2017, defendant, his then-girlfriend (now wife), and several others had a get-together at his aunt's home. Defendant's wife bought the alcohol for the gathering. This included a 12-pack of Mike's Hard Lemonade, some rum,

and a 12- or 18-pack of beer. Neither she, nor anyone else, testified as to how much defendant or anyone else drank that night. All defendant's wife could testify to is she got so drunk that day she did not remember anything that happened after 9:00 p.m. She stated she did not remember defendant showing up at the home, but it must have been after 9:00 p.m. The only reason defendant's wife knows he was there is she later saw videos of that night. At the same time, she did not remember defendant being at the house, but was sure she and defendant were drinking.

Defendant's wife identified six cellular telephone Snapchat videos taken by defendant the night of the murder between 9:52 and 10:23 p.m. Five of the videos showed defendant drinking something from a plastic cup and singing along with rap music playing in the background. Generally, defendant was smiling, his eyelids were drooping, and he was singing and swaying with the music. He was able to keep up with and timely match the lyrics of the songs playing in the background and his speech did not appear slurred. One video showed defendant holding a bottle of Mike's Hard Lemonade that was about three-quarters full, but not drinking from it. The prosecution also showed the jury photos of several glass bottles found throughout the house. The inventory included a quarter-full bottle of brandy, two empty bottles of Mike's Hard Liquor, and five empty beer bottles.

Defendant did not testify and no testimony was presented at trial that defendant was intoxicated, or how much alcohol defendant consumed over any period of time that evening.

E.V. testified he and four other family members were drinking beer and listening to music in their garage down the street from the imminent shooting. They heard a loud blood-curdling scream from a woman for a couple minutes. In an effort to drown out that noise, they turned up the volume on their music. When the screaming continued, the men went down the street to investigate.

E.V. and T.V. testified they saw a woman on the ground and a guy with long hair verbally fighting. E.V. asked the man is everything okay. In response, the man pulled out his gun from his waistband and pointed it at E.V.'s head, shouting for them to mind their own business. As E.V. and his friends retreated, the man shot E.V. four times. The man also shot and killed Ricardo Valenzuela.

Another neighbor, D.N., also heard a woman screaming. She went out to investigate and saw a woman on the ground and defendant standing by her. D.N. saw defendant fire the gun at the men who came to investigate, including her son-in-law, E.V. Originally, D.N. told officers a different man was the shooter. At trial, she stated she was confused and mistaken that night.

Neighbor R.S. testified he heard gunshots, yelling and screaming. He went to look out of his window and saw defendant with a gun and another man fall to the ground who was likely shot and dead or dying. The murder was caught on the doorbell camera located at R.S.'s home.

The prosecution played the doorbell camera video for the jury which showed the five men approach defendant and ask what was happening. Defendant responded with a string of expletives. The men then ran back the way they came and five shots rang out from the gun in defendant's hand. The video showed defendant shooting Ricardo Valenzuela twice in the back, killing him. Defendant continued to yell at the men and then pistol-whipped and kicked the man on the ground as he was dying or was already dead.

Police received the call about the shooting at 11:40 p.m.

An information charged defendant with premeditated murder (Pen. Code, § 187, subd. (a); count 1; statutory section citations that follow are found in the Penal Code unless otherwise stated); three counts of attempted premeditated murder (§§ 664/187, subd. (a); counts 2, 3, and 5); being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts 4 and 7); and second degree robbery (§ 211; count 6). As to count 3, the

4

information alleged defendant intentionally and personally discharged a firearm. (§ 12022.53, subd. (c).) As to counts 1, 2, 5, and 6, the information alleged defendant intentionally and personally discharged a firearm causing great bodily injury or death. (§ 12022.53, subd. (d).) The information alleged as to counts 1, 2, 3, 5, and 6 defendant used a firearm in the commission of a felony. (§ 12022.5, subd. (a).) Finally, as to counts 2, 5, and 6, the information alleged defendant inflicted great bodily injury. (§ 12022.7, subd. (a).)

A jury found defendant guilty of all charges and found all charged enhancements to be true.

The trial court noted as factors in aggravation that defendant had engaged in violent conduct that indicates a serious danger to society and a high degree of cruelty. The judge found the victims in both cases were particularly vulnerable. The trial court highlighted the liquor store employee was just trying to get back the beer defendant's accomplice stole, and defendant used a gun without remorse and after he shot the victims, he pistol-whipped them. The trial court further found defendant placed no value on human life, had prior convictions for other crimes, and was on probation for gun charges at the time of the offense. The only factor in mitigation was defendant's involvement in the Center for Fathers and Families, but the trial court found that involvement stood in stark contrast to the crimes committed by defendant.

As to count 1, first degree murder, the trial court sentenced defendant to 25 years to life, plus a consecutive 25 years to life for the gun enhancement under section 12022.53, subdivision (d). On the attempted premeditated murder counts 2 and 5, the trial court sentenced defendant to consecutive terms of life with the possibility of parole, plus consecutive 25-year to-life terms under section 12022.53, subdivision (d). For counts 1, 2 and 5, the trial court struck the remaining enhancements on these charges as lesser included offenses. For the attempted premeditated murder charged in count 3, the

5

trial court sentenced defendant to a consecutive life with the possibility of parole, plus a 20-year-to-life sentence on the gun enhancement under section 12022.53, subdivision (c).

Defendant stipulated he is prohibited from owning, possessing, or receiving a firearm as a result of a prior felony conviction. For a felon in possession of a firearm count (counts 4 and 7), the trial court sentenced defendant to a concurrent upper term of three years because defendant was on probation for the same charges at the time of the offenses. Finally, for the robbery (count, 6), the trial court imposed the upper term of five years, plus a consecutive term of 25 years to life, but stayed the sentence pursuant to section 654. The court chose to impose the upper term on count 6 due to the violent nature of the robbery that showed a level of callousness and cruelty.

Defendant timely appealed. After delays for record preparation and briefing continuances, the case was fully briefed on September 6, 2022, and was assigned to this panel shortly thereafter.

## DISCUSSION

### I

### *The Jury Instruction on Voluntary Intoxication*

Defendant contends the trial court committed error by not instructing the jury on voluntary intoxication.

The trial court had to determine whether there was substantial evidence to justify giving the instruction. This court reviews that determination de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 730.)

During trial, the trial court informed the parties it was "struggling" with the voluntary intoxication instruction. Its initial inclination was to give the jury instructions on voluntary intoxication, but it reserved its decision for additional research.

At the next jury instruction conference, the court said it did not believe there was sufficient evidence of voluntary intoxication. Defense counsel disagreed, arguing the

6

Snapchat videos demonstrated sufficient evidence of defendant's intoxication for the instruction because they showed him drinking, his eyes glazed, and slurring his speech. The prosecutor suggested the court should give the instruction "just in case." The trial court responded, "I don't know about that. I watched those videos, he's holding a cup in two of the videos, I don't know what's in the cup. And the third video he's holding a Mike's hard lemonade but he wasn't drinking it in the video and he's singing in the videos, they're singing. I don't think there's enough evidence to give voluntary intoxication. I can't say his eyes were glazed over because of drinking. I can't say his speech was slurred because of drinking. Mrs. Esparza never testified as to the defendant's state of sobriety, she said she was drunk, she didn't know what the defendant was doing. I don't think there's enough."

Counsel pointed to the evidence of beer bottles in the home. The trial court countered there was no evidence of who the bottles belonged to, or who drank the beer that was in them. The court again reserved judgment on this issue.

Ultimately, the trial court declined to instruct the jury on voluntary intoxication finding there was not substantial evidence of defendant's intoxication to warrant the instruction. The trial court based its ruling on the fact no one testified defendant was intoxicated or that his behavior displayed he was intoxicated. His wife never testified as to how much defendant drank, or whether he was intoxicated. In all the videos, he had a cup in his hand, but he never drank on camera. Further, the court noted the videos were similar to the way defendant swayed when on camera at the liquor store robbery a year prior. Defendant's counsel told the court despite the lack of instruction, he would still argue defendant was intoxicated, and among other arguments, raised the fact defendant was drinking in his closing argument.

The relevant instruction, CALCRIM No. 625, states: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to

kill[,] [or] [the defendant acted with deliberation and premeditation[,]] [[or] the defendant was unconscious when (he/she) acted[,]] [or the defendant <insert other specific intent required in a homicide charge or other charged offense>.]"

As a general matter, a criminal defendant is entitled, on request, to instructions that pinpoint the theory of the defense when the instruction is supported by substantial evidence. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1142, citing *People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Even when requesting a voluntary intoxication instruction, a "defendant is entitled to such an instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.' (*People v. Horton* (1995) 11 Cal.4th 1068, 1119; see also [ ] *Saille*[, at p. 1117] [explaining that a defendant charged with murder is free to show that 'because of his mental illness or voluntary intoxication, he did not *in fact* form the intent unlawfully to kill'].)" (*People v. Williams* (1997) 16 Cal.4th 635, 677.) Attempted murder similarly is a specific intent crime that requires a specific intent to kill. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 664.)

In this context, substantial evidence is "evidence sufficient to 'deserve consideration by the jury,' not 'whenever any evidence is presented, no matter how weak.' " (*People v. Williams* (1992) 4 Cal.4th 354, 361.) For example, our Supreme Court concluded testimony the defendant was "probably spaced out" on the morning of the killings did not rise to the level of substantial evidence that required the giving of this instruction. (*People v. Williams*, *supra*, 16 Cal.4th at p. 378.)

Here, defendant invites us to review the Snapchat videos to inform our decision on this issue, and we have. This video evidence supports an inference defendant was likely drinking two hours prior to the Valentine's Day murder and attempted murders. But that is as far as it goes. The videos show a young man capable of singing along with the lyrics of the songs he was listening to and did not show him drinking any alcohol. Contrary to defendant's characterization, we do not hear defendant slurring his words as

he sang along with the music. Further, while his eyes may have been a bit glassy, we conclude this is not substantial evidence of intoxication or that defendant's intoxication affected his ability to formulate the specific intent required for the crimes charged.

Importantly, no person testified how much alcohol defendant drank; what his blood-alcohol level was or how his consumption of alcohol affected his ability to formulate specific intent, to deliberate or premeditate. There was no evidence how much he drank before the videos, whether he stopped drinking after the last video or drank more. Further, defendant's conduct captured on the Snapchat videos mirrored his actions in the parking lot during the liquor store robbery where there was no evidence or inference defendant had consumed any alcohol. Thus, we conclude there was no substantial evidence defendant was intoxicated, much less any evidence establishing his intoxication affected his ability to formulate specific intent. The trial court did not err.

II

*Senate Bill 567*

Senate Bill 567 became effective January 1, 2022. (Stats. 2021, ch. 731; Cal. Const., art. IV, § 8, subd. (c).) The act generally prohibits a trial court from imposing an upper term sentence except where there are circumstances in aggravation of the crime that justify imposing the upper term, and the facts underlying those circumstances (1) have been stipulated to by the defendant, or (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) An exception to this rule authorizes the court to consider defendant's prior convictions in determining sentencing based on certified records of conviction without submitting the prior convictions to the jury. (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)

The parties and we agree that Senate Bill 567 is retroactive and applies to this nonfinal case. The act provides an opportunity for defendant to receive a lesser penalty,

and there is no indication the Legislature intended the act to apply prospectively only. (*In re Estrada* (1965) 63 Cal.2d 740, 746.)

The facts underlying the court's three findings for imposing the upper term on count 4 (defendant was on probation at the time of the offense—Cal. Rules of Court, rule 4.421(b)(4)), count 6 (the violent nature of the robbery demonstrated defendant's callousness and cruelty—Cal. Rules of Court, rule 4.421(a)(1)), and count 7 (defendant was on probation for the same offense—Cal. Rules of Court, rule 4.421(b)(4)) were not found true by a jury or stipulated by defendant. Accordingly, applying Senate Bill 567 retroactively, it was error to consider those factors as supporting the imposition of an upper term sentence.

The Attorney General contends that any error in not satisfying Senate Bill 567 was harmless because the jury, beyond a reasonable doubt, would have found true the aggravating circumstances upon which the court relied. We agree.

Senate Bill 567 is now the statutory means by which California provides criminal defendants their Sixth Amendment right to a jury trial on upper-term sentencing factors. Defendant raises no Sixth Amendment violation here. He solely focuses on his state right under Senate Bill 567. To find harmless error for state law error, we apply the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). Under that standard, "we must find that the trial [court] *would* have imposed the upper term sentence even absent the error. In particular, we must consider whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error." (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112.)

To apply this test, we must ask two questions. For each aggravating fact, we must consider "whether it is reasonably probable that the jury would have found the fact not true. We must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*People v. Zabelle*, *supra*, 80 Cal.App.5th at

10

p. 1112.) "A reasonable probability . . . does not mean more likely than not; it means a reasonable chance and not merely a theoretical or abstract possibility. [Citations.]" (*People v. Woods* (2015) 241 Cal.App.4th 461, 474 [applying *Watson* standard to omission of instruction on lesser included offense].)

For counts 4 and 7, we conclude it is not reasonably probable the jury would have found "not true" the fact defendant committed the possession of firearm counts while on probation for the same crime. Defendant's criminal record was not subject to significant dispute, and in fact, defendant's prior conviction (but not its substance) was stipulated to the jury as the basis for the felon in possession of a firearm charges. His entire reported prior criminal history consisted of two convictions, including the one he was on probation for at the time of the instant crime, and defendant did not urge the court as to any errors in the probation report after the trial court gave its tentative sentence when he had every incentive to do so. Thus, we conclude, there is not a reasonable probability a jury would have found this fact not true.

As to count 6, the robbery was caught on camera. To foil the recovery of a 12-pack of beer, defendant shot the employee four times at point-blank range and then defendant attacked him on the ground after the employee fell. The sheer trivial nature of the property he sought to retain by using lethal force and the rage he exhibited in continuing the attack while the victim was shot and lying on the ground shows cruelty and callousness. We conclude it is not reasonably probable a jury would have found this fact not to be true.

Because these facts are the only facts relied upon by the trial court in imposing the upper terms, we have no doubt the trial court would have sentenced defendant to these three upper terms had the jury found them to be true. Thus, we conclude any error here is harmless.

11

DISPOSITION

The judgment is affirmed.

_____
HULL, Acting P. J.

I concur:

_____
BOULWARE EURIE, J.

MAURO, J., Concurring and Dissenting.

I fully concur in the majority opinion with the exception of part II, as to which I dissent.  In part II, the majority concludes that although the imposition of the upper term sentence does not now comply with the amended statutory requirements of Penal Code section 1170, subdivision (b), the lack of statutory compliance is nevertheless harmless. I disagree.

The trial court sentenced defendant to the upper term without the benefit of Senate Bill No. 567 (2021-2022 Reg. Sess.), which amended Penal Code section 1170, subdivision (b) to provide that a trial court may only impose an upper term sentence if aggravating circumstances are stipulated to by the defendant, have been found true beyond a reasonable doubt, or are based on a certified record of conviction.  (§ 1170, subd. (b)(1)-(3); Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.)  I do not agree that the trial court's findings of aggravating circumstances were harmless given the current statutory requirements.

_____

MAURO, J.

1