Filed 4/12/23  P. v. Welch CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C095476 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF-17-00159) |
| v. | |
| CAMERON MICHAEL WELCH, | |
| Defendant and Appellant. | |

A jury found defendant Cameron Michael Welch guilty of committing corporal injury on his spouse, possessing a firearm as a felon, possessing ammunition as a felon, and failing to appear.  The trial court then imposed a sentence that included the upper term on the corporal injury count.  On appeal, defendant claims:  (1) the court erred when it permitted the victim to testify about prior incidents of domestic violence between her and defendant; (2) his upper term sentence should be reversed and remanded in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567); and (3) he received ineffective assistance of counsel because defense counsel failed to object to several fines

1

and fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157. We will affirm the judgment.

## BACKGROUND

The prosecution charged defendant with corporal injury on a spouse (Pen. Code, § 273.5, subd. (a); count 1),[1] possession of a firearm as a convicted felon (§ 29800, subd. (a)(1); count 2), possession of ammunition as a convicted felon (§ 30305, subd. (a)(1); count 3), and failure to appear while out on bail (§§ 1320.5, 12022.1; count 4). The prosecution also alleged defendant had a prior strike conviction based on a 2009 conviction for corporal injury on a dating partner (§ 273.5) with a great bodily injury enhancement (§ 12022.7, subd. (e)). Defendant admitted the prior strike and bail enhancements before trial.

At trial, the victim testified defendant had a history of domestic violence before and after they were married. The victim had a history of abusing alcohol and self-harm. The evening of the charged offense, the victim was upset and wanted to get a drink. Defendant and the victim went for a drive and drank vodka. They returned home eventually, and the victim remembered entering through the garage, but did not recall anything after that.

Before the two had left the house, the house was clean and tidy, and the doors were intact. The victim was also uninjured. When the victim woke up in the morning, the house was in disarray. Defendant was asleep. There was a shotgun that the victim had never seen before in the house. The victim had a "flash of memory" from the night before: she was sitting on the bed and defendant was pressing a handgun against her skin. The victim looked in a mirror and saw dried blood on her face and several injuries she did not have before. In particular, she had abrasions or lacerations on her neck,

---

[1] Undesignated statutory references are to the Penal Code.

2

bruising behind her right ear, dried blood and an abrasion above her eye, and a bruise and laceration on her thigh. She also had bruises on her torso and hands.

The victim called a friend and said she and defendant had been fighting all night, that he had weapons in the house, "had been physical with her," and that she was hiding in a closet. The victim also sent pictures of her injuries and firearms in the house. The friend and her boyfriend called law enforcement.

A sheriff's deputy arrived at the house, but no one answered the door. Dispatch routed a call from defendant to the deputy, and defendant asked what was wrong with the victim. The deputy asked him why he would think something was wrong with the victim, but defendant did not respond. The victim eventually let the deputy into the house. She appeared to have fresh injuries and the house was in "complete disarray," with a broken door near the fireplace. The deputy found a variety of ammunition around the home, but could not find the shotgun the victim showed him in a photo she had taken earlier that morning. The victim told the deputy she did not have a specific memory about how she had been injured, but said defendant had inflicted them.

The jury found defendant guilty of all charges.

At the sentencing hearing, defense counsel challenged several items in the probation report, including misstatements about which prior conviction constituted a prior strike. Defense counsel also objected to the amount of victim restitution. Defendant asked to speak, and then engaged the court in a lengthy exchange in which he acknowledged he had been convicted of two felonies before the current offense, admitted he was on parole at the time of the offense, and said he made a "huge mistake" in marrying the victim because she had "mental health issues." The court eventually ordered defendant removed from the courtroom.

The court imposed an aggregate term of 14 years: eight years (the upper term, doubled) for count 1, 16 months each for counts 2 through 4, and two years for the bail enhancement. The court explained it selected the upper term based on defendant's two

3

prior felony convictions, prior prison terms, and because he was on parole at the time of the current offense. The court imposed a $3,600 restitution fine (§ 1202.4) with a matching parole revocation fine (§ 1202.45), suspended pending parole revocation, and said defendant "has a limited ability to earn wages while in the Department of Corrections." The court also imposed a $160 court security assessment (§ 1465.8) and $120 criminal conviction assessment (Gov. Code, § 70373).

DISCUSSION

I

*Prior Acts of Domestic Violence*

Defendant argues the trial court erred when it admitted evidence of defendant's prior acts of domestic violence toward the victim and a previous girlfriend. In particular, defendant objects to the number of incidents introduced and argues they were unduly prejudicial under Evidence Code section 352 because they were uncorroborated by other evidence, distracted the jury, and were cumulative. We disagree.

*A.     Background*

Before trial, the prosecution filed a motion in limine seeking the admission of defendant's prior acts of violence under Evidence Code section 1109. In particular, the prosecution highlighted an incident in October 2016 where defendant grabbed the victim by the throat and pinned her against a wall. The prosecution also identified incidents the victim testified to at the preliminary hearing, including an incident where defendant had tied the victim up and threatened to kill her. The motion also highlighted an incident from 2009 with a previous girlfriend in which defendant struck the girlfriend in the face and strangled her until she lost consciousness.

The court found the 2016 incident admissible under Evidence Code section 1109 and *People v. Zack* (1986) 184 Cal.App.3d 409, in that it showed the "up and downs and all the violence that is involved in this particular relationship." The court ruled similarly as to the other incident with the victim, saying it was included as part of "the totality of

4

the relationship, the entire relationship between defendant and his spouse." The court also determined the prosecution could use certified documents proving the conviction for the incident with defendant's prior girlfriend, but that the specific facts would be inadmissible unless the prior girlfriend testified.

At trial, the victim testified there had been approximately 10 or 15 times defendant was physically violent with her before they were married in 2016. She said there was "nothing . . . off limits," including "strangulation, slamming my head up against windowsills," and hurting her arms and legs. She was frequently injured and would use makeup or clothes to hide the injuries. After they were married, she estimated he had been violent with her at least six times.

In particular, she recounted an incident in which defendant held her against a wall by her neck. She also remembered an incident where defendant choked her to prevent her from calling police. She briefly mentioned an incident in which defendant shoved her in the shower when she was getting ready for work and punched her in the legs because she was talking to someone at work. In one instance, defendant broke furniture. Defendant tied her up and told her he was going to chop her up and throw her in the river. The victim told a friend about some of the abuse, but did not disclose the severity to anyone, and did not report defendant to law enforcement.

During a break in the proceedings, defense counsel moved for a mistrial based on the victim's testimony, saying the specific number of incidents the victim testified to was beyond the scope of the court's ruling on the motion in limine. The court denied the motion, citing to Evidence Code section 1109 and *People v. Zack*, *supra*, 184 Cal.App.3d 409.

Deputy Phillip Bronson testified that when he spoke with the victim on the day of the incident, she told him about prior incidents of domestic violence between her and defendant, including an incident where defendant grabbed her throat and pinned her against a wall. Defendant also told her he was going to "chop her up into little pieces."

5

*B.    Analysis*

Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's propensity to commit such acts. (Evid. Code, § 1101.) There is an exception, however, in cases involving domestic violence. (Evid. Code, § 1109.) Evidence Code section 1109, in effect, " 'permits the admission of defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes.' " (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.) The admission of prior acts as propensity evidence encompasses both charged and uncharged acts. (*Ibid.*)

"Even if the evidence is admissible under [Evidence Code] section 1109, the trial court must still determine, pursuant to [Evidence Code] section 352, whether the probative value of the evidence is substantially outweighed by the probability the evidence will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury." (*People v. Brown, supra*, 192 Cal.App.4th at p. 1233.) The law requires " ' "the probative value of the evidence must be balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." ' " (*People v. Thomas* (2021) 63 Cal.App.5th 612, 630, quoting *People v. Culbert* (2013) 218 Cal.App.4th 184, 192.) " 'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.)

The court enjoys broad discretion in making this determination, and the court's exercise of discretion will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 480.) To determine whether the trial court abused its discretion, we must focus on what the court was made aware of at the time it ruled on the motion; a party cannot argue on appeal that

6

the trial court erred in failing to conduct an analysis it was not asked to conduct. (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208.)

Here, defendant's acts of prior domestic violence were probative because they occurred not long before the current offense and tended to show defendant's actions were willful and intentional. For example, defendant had a history of restraining the victim by the throat or strangling the victim, which suggested the marks on the victim's neck were not accidental or self-inflicted. At trial, defendant explicitly argued the victim's injuries may have been caused as a result of the victim's own actions or as self-harm, and defendant's history of domestic violence effectively rebutted that claim.

Moreover, the prior acts of domestic violence were not significantly more inflammatory than the charged offense. Many of the previous incidents were not summarized in detail, aside from general statements about defendant's conduct, and the incidents that were explained involved injuries that were less severe. (See *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) The evidence did not consume a large amount of time and was straightforward, avoiding any risk of confusing the issues for the jury. For the same reasons, we do not agree that the evidence was unduly cumulative.

Defendant contends the evidence was not sufficiently corroborated by third party testimony or other evidence. Evidence Code section 1109, subdivision (d)(3) states, in pertinent part: "Subject to a hearing conducted pursuant to [Evidence Code] Section 352, which shall include consideration of any corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." "Consideration" of any corroboration, however, does not mean that corroboration is required. (*People v. Mani* (2022) 74 Cal.App.5th 343, 372.) Moreover, the language "any corroboration" implies a broad interpretation of evidence that could corroborate the victim's testimony. (*Id.* at p. 373.) Here, the victim told Deputy Bronson about at least one incident of domestic violence, and the victim's friend noted the victim frequently asked her to cover shifts at

7

work and she "worried things weren't right." (Cf. *Id.* at p. 373 [concluding contemporaneous police reports may serve as corroboration of the event].) We do not agree the court abused its discretion simply because each individual incident the victim mentioned was not independently corroborated by other evidence.

Nor do we agree the jury might punish defendant for the uncharged acts rather than the current offense. The court instructed the jury using CALCRIM No. 852A (evidence of uncharged domestic violence), which cautioned the jury that the prosecution was required to prove each charge beyond a reasonable doubt, the prior acts of domestic violence were not sufficient by themselves to constitute such proof, and the acts could not be considered for any other purpose. This instruction guarded against the possibility the jury would use the evidence for an improper purpose. (*People v. Wilson* (2008) 44 Cal.4th 758, 803 [jury presumed to follow jury instructions].) And while the potential for punishment is a legitimate factor for the court to consider in the Evidence Code section 352 analysis (*People v. Tran* (2011) 51 Cal.4th 1040, 1047), the minimal potential for such an effect does not substantially outweigh the probative value we conclude exists here. (*People v. Mani*, *supra*, 74 Cal.App.5th at p. 373.)

We conclude the trial court did not abuse its discretion when it admitted the prior acts evidence.

## II

### *Senate Bill 567*

Defendant contends the trial court prejudicially erred when it imposed the upper term on the corporal injury count in violation of Senate Bill 567 and section 1170, subdivision (b).

Senate Bill 567 became effective January 1, 2022. (Stats. 2021, ch. 731; Cal. Const., art. IV, § 8, subd. (c).) The legislation generally prohibits a trial court from imposing an upper term sentence except where there are circumstances in aggravation of the crime that justify imposing the upper term, and the facts underlying those

8

circumstances (1) have been stipulated to by the defendant, or (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) An exception to this rule authorizes the court to consider defendant's prior convictions in determining sentencing based on certified records of conviction without submitting the prior convictions to the jury. (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)

We agree with the parties that Senate Bill 567 applies retroactively to defendant's case. (See *People v. Jones* (2022) 79 Cal.App.5th 37, 45; *In re Estrada* (1965) 63 Cal.2d 740, 742.)

The trial court identified three reasons for imposing the upper term: (1) defendant's two prior felony convictions in 2003 and 2009, (2) that defendant served prison terms for both of those prior felony convictions, and (3) the fact that defendant was on parole when he committed the current offense. The 2009 felony conviction was established using certified records of defendant's conviction, but the 2003 conviction was not. During the sentencing hearing, defendant acknowledged he had two prior felony convictions and was on parole at the time of the current offense.[2] Thus, at least some of the factors the court relied on to impose the upper term—defendant's prior prison terms and, arguably, the 2003 conviction—were not found true by a jury or stipulated to by defendant. Thus, under section 1170, subdivision (b), it was error for the trial court to consider these circumstances to impose the upper term.

We next consider whether the error was prejudicial. The law requires a two-step analysis for determining harmless error: (1) whether the court *could* impose the aggravated term under the Sixth Amendment, and (2) whether the court *would* impose the aggravated term under section 1170. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098,

---

[2] Defendant agrees he admitted he was on parole, but argues the admission of the prior convictions is insufficient because it did not include the required plea colloquy.

1112 (*Zabelle*).)  We review the first question for prejudice under the standard described in *Chapman v. California* (1967) 386 U.S. 18, and the second question under the standard in *People v. Watson* (1956) 46 Cal.2d 818.  (*Zabelle*, at pp. 1112-1113.)

In the first step, we determine whether a jury would have found true beyond a reasonable doubt at least one of the aggravating factors the trial court relied on to impose the aggravated sentence.  (*Zabelle*, *supra*, 80 Cal.App.5th at pp. 1112-1113.)  Here, defendant admitted on the record he committed the current offense while on parole.  Given this admission, we conclude, "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true" this aggravating circumstance "had it been submitted to the jury." (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.)  Thus, there is no Sixth Amendment error.

To examine the state law violation, we apply the standard set forth in *Watson* to determine whether the trial court's error was harmless.  Under that standard, "we must find that the trial [court] *would* have imposed the upper term sentence even absent the error.  In particular, we must consider whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error." (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1112.)

To apply this test to a violation of section 1170, subdivision (b), we must ask two more questions.  For each aggravating circumstance, we must consider "whether it is reasonably probable that the jury would have found the fact not true.  We must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1112.)  "A reasonable probability . . . does not mean more likely than not; it means a reasonable chance and not merely a theoretical or abstract possibility." (*People v. Woods* (2015) 241 Cal.App.4th 461, 474 [applying *Watson* standard to omission of instruction on lesser included offense].)

10

Here, the jury would likely have found true all three of the aggravating circumstances the court identified. The probation report contained information on defendant's prior prison terms and the 2003 conviction. At the sentencing hearing, defendant challenged specific items in the probation report, such as which prior conviction constituted a strike, but did not challenge the existence of prior prison terms or the 2003 conviction. (See *People v. Epps* (2001) 25 Cal.4th 19, 29 [finding the denial of a statutory right to a jury trial on a prior conviction harmless where the only factual question for the jury was whether the prior convictions occurred and the defendant did not question this fact].) Nor do the disputed circumstances rest on "vague or subjective" standards such that it would be difficult to assess how a jury would construe them; the existence of the conviction and prior prison terms is a purely binary question. (*People v. Sandoval*, *supra*, 41 Cal.4th at p. 840 ["to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].) Thus, we conclude there is no reasonable probability the jury would have found defendant did not serve a prior prison term or did not receive the 2003 conviction.

The trial court's statements at the sentencing hearing leave little doubt the trial court would have imposed anything except the upper term under these circumstances. After a lengthy colloquy between defendant and the court, the court commented: "[Defendant], as I recall, did not testify in front of the trial. And that was a good tactic because he just removed all doubt that I could have had about how dangerous he is. He doesn't honor the laws. He thinks he did nothing wrong; that he is the victim in this matter. He's actually battered both of his girlfriends. . . . [T]he previous girlfriend, with great bodily injury, that was the Sutter County prison commitment. And he is on parole for this matter when he commits the new offense and batters his wife in a very

11

sadistic . . . ." Defendant then interrupted and was removed from the courtroom. The court imposed the total sentence, saying, "I think what needs to be done is he needs to be in the Department of Corrections for as long as possible, and that is my intent." Based on the court's statements, we think it is highly unlikely the court would have imposed anything less than the upper term under these circumstances. We thus see no prejudice in the trial court's error.

III

*Fines, Fees, and Assessments*

Relying on *People v. Dueñas*, *supra*, 30 Cal.App.5th 1157, defendant challenges imposition of various fines and assessments because the court did not hold a hearing on his ability to pay. Recognizing defense counsel did not raise an objection on his ability to pay, defendant argues he received ineffective assistance of counsel. We see no merit to defendant's claims.

A defendant generally forfeits a claim not first raised with the trial court, even if the claim is constitutional in nature. (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881.) Forfeiture applies to general claims relating to assessments, fines, and fees, including those made under *People v. Dueñas*. (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153.)

Defendant did not object to imposition of any of the now challenged fines and assessments, and instead chose to challenge only the amount of the victim restitution award at his sentencing hearing. Defendant thus forfeited this claim. Anticipating this outcome, defendant argues he received ineffective assistance of counsel because trial counsel failed to raise this objection. We disagree.

The burden of proving ineffective assistance of counsel is on the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish constitutionally inadequate representation, a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. (*Ibid.*)

12

We defer to trial counsel's reasonable tactical decisions to examine a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) On direct appeal, "competency is *presumed* unless the record *affirmatively* excludes a rational basis for the trial attorney's choice." (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gray* (2005) 37 Cal.4th 168, 207.) Mere speculation is insufficient to support a finding of ineffective assistance of counsel. (*People v. Williams* (1988) 44 Cal.3d 883, 933.) Failure to object rarely constitutes deficient counsel performance. (*Gray*, at p. 207.)

At the sentencing hearing, defense counsel chose a number of specific objections to raise. In particular, defense counsel successfully argued for several corrections to the probation report. Counsel also focused on defendant's remedial efforts, including his completion of an anger management course and receipt of a high school diploma. He argued about the specific amount to be paid for victim restitution. Defendant then engaged in a lengthy colloquy with the court in which defendant made several damaging admissions. The court eventually ordered defendant to be removed from the courtroom after he repeatedly interrupted.

Defense counsel may have concluded that a focus on defendant's remedial efforts, including the high school diploma and anger management course, would be inconsistent with an objection to paying a restitution fine based on his ability to earn money. Alternatively, defense counsel may not have wanted to request a hearing on defendant's ability to pay because defendant may have wanted to testify at such a hearing, and counsel feared defendant would make further damaging admissions if he were permitted to do so. In any case, defense counsel had plausible reasons not to object, and we see no ineffective assistance of counsel.

DISPOSITION

The judgment is affirmed.

/s/
_____
BOULWARE EURIE, J.

We concur:

/s/
_____
RENNER, Acting P. J.

/s/
_____
EARL, J.